Good morning, your honors, and may it please the court. My name is Mark Ebert, and I represent Mr. Daniel Gonzales, the petitioner. I'll be relatively brief because there are just so many issues and sub-issues in this case. I want to make sure that I concentrate on the ones that you all have questions on. But there are basically two witnesses here whose hearsay testimony is that issue. As to the first one, Yesenia Simon, both the California Court of Appeal and the district court found that there was a confrontation clause violation here. And that finding was not disputed by the state in the district court below. So the only issue here is whether or not the admission of Ms. Simon's testimony or her statements through the police officer was harmless. And it wasn't for three basic or broad reasons. Harmless under the Epstein. Yeah. Well, sure. Yeah. Harmless under BRAC, VA, and the law. Well, I mean, we have to find that the California's best reasoned decision of the California Court of Appeal unreasonably applied the harmless error rule. And the reasons that they did are as follows, basically three basic reasons. The first is that the prosecutor said repeatedly to the trial court, when trying to get this evidence admitted, that, yes, this evidence was crucial to his case, it was important to his case, that without this evidence a lot of his case would disappear. And all three of those, as best I can recall, are quotes. And he made them at several different points. And I think that you can't do that. Well, irrespective of that, it appears that the California court looked at this case and said, you basically have two things here. One, a really solid case of direct evidence. And a whole bunch of hearsay, the truck, hearsay truck was pulled up to the jury box and dumped in. And we think that it's harmless in light of the significant evidence of this individual's guilt. What's your response to that? My response to that is, first, again, what the prosecutor said. And I think that can't be totally discounted, nor can the Court discount the emphasis that he placed on this exclusive evidence. It was an actual eyewitness to the shooting. Correct. Who testified. Right. And that eyewitness, which is Ms. Serrano. Ms. Oliva. Oliva. I'm just trying to find the right page. The question is whether the prosecutorial misconduct and the Confrontation Clause violations that the courts below found were harmless. Can we come back to the question I asked? There was an eyeball witness to the shooting who watched the whole event, correct? Right. She appeared in court and testified despite your client's efforts to intimidate her. There was no evidence that Mr. Gonzales tried to intimidate her in this case. There was. He didn't repeatedly call her. Oh, right, right. Excuse me. She testified to that. The question was whether her ---- I'm sorry. I was thinking of Ms. Simon. Look, the prosecutor. And then you have the aunt who supplied the vehicle that was present at the scene, the Explorer Expedition or whatever it was, who took the Fifth Amendment on the stand. On the advice of her attorney who was present and who took it four or five times in a row. Look, the prosecutor understood that with Oliva alone he did not have much of a case. This was a person who, number one, is a methamphetamine addict, came there with her baby to buy methamphetamine. That's why she was at the scene. Initially she told me ---- Any evidence that impaired her vision? No. She knew your client. She had done drug deals with him in the past. She was there to do a drug deal, and she watches this confrontation between two opposing gang members and watches as your client goes back to his vehicle and retrieves a weapon and goes over and kills this guy. And the first ---- Is anything of what I just said wrong? Yes, she did not know that it was a confrontation between two gang members or that it was gang-related. That I disagree with. Okay. Other than that, yes. But the first time she was ---- They could have been members of the same Boy Scout troop. She watched him walk back to the vehicle, retrieve his weapon, walk over and shoot the guy. That is what she testified to. Okay. And why is the California court's conclusion that the case was solid, pretty rock-solid in terms of eyewitness testimony, overwhelming evidence of guilt? What's wrong with that? Because the first time that Ms. Oliva was questioned by the police, she said that Mr. Gonzales was not involved, she did not see it. She said that the second time she was questioned by the police. The first time she was questioned, she said that Javier Mena, who the defense claimed was the actual shooter, was present, and indeed it was his car that was at the shooting. She later changed her mind. Why did she change her mind? Well, what we know is that she knew Javier Mena and that he had threatened to kill her if she testified against him. We also know that he was a friend of her family's. And the reason she said she changed her testimony was that she had found God, she wasn't on probation anymore, and that she was involved in Bible studies. But when questioned about the Bible studies, she couldn't remember a single thing about what the Bible said. This is a person that had severe credibility problems and could not establish motive. That came in through the Confrontation Clause violations. Could not establish that there was a gang relationship between the shooting or as a reason for the shooting. I thought the principal theory of the defense was identification. Identification in that it was Javier Mena that did the shooting, yes. Well, yeah, the defense argued it was Mena who did the shooting and the car was registered to him and all that. But there was also DNA evidence and there was the cell phone records between Oliva and the defendant. And there was also the fact that the casings from the gun matched a gun that was found in an apartment that he had connections with. The latter is not correct, Your Honor. What was found was that three weeks later he had access to an apartment where there were like four or five different calibers of ammunition found. Is that his girlfriend's apartment? I think that was the assumption or the allegation. But the murder weapon was never found. The murder weapon was never found. The only gun that was found there was a different caliber than was used. And, you know, there were four or five different kinds of ammunition found, only one of which was consistent with what was used in the shooting. I know. Admittedly, it's a very difficult standard to meet, to overcome. The review is we've now been instructed to apply it. So give us a really good, strong, solid reason why it was unreasonable to determine. The question is, Your Honor, whether or not these errors, which really are not disputed, certainly not below in terms of confrontation clause and prosecutorial misconduct, whether that was harmless. And I think you have to take it as a whole. Not only does the prosecutor repeatedly say, I have to have this, Your Honor. A lot of my case disappears. It's crucial. But when you take this evidence that should not have been included, should not have been allowed, they provide the only evidence of motive, the only evidence of any admissions by the defendant, the only basis for the gang expert testimony, which was devastating, and which the court of appeal and the district court was found was based on prosecutorial misconduct. They take out the only credible witness to the shooting, which is Ms. Sumner, and prevent what they basically did was they allowed the part in which she incriminated the defendant in, but using the hearsay rules prevented the defense from cross-examining her about the fact that she identified someone other than Mr. Gonzalez in a photographic manner as the shooter. Your argument basically is that it's impossible to segregate the evidence that's fueled by error from the rest of the case. From the very weak evidence, I would say, that's left from Ms. Oliver, who has severe credibility problems and holes in terms of motive, in terms of gang relationship, and so on. You never get to the gang expert who basically says all gang members are rabid dogs and if you look at them, they kill you on the spot. You never even get to that kind of stuff. Well, they show disrespect. Yes. Well, if you look at them, you show disrespect, he says. And so, you know, I think that the prosecutor knew his case. I think he knew why he needed it, and I think there's a reason why he went to the extent of committing what the California court said was prosecutorial misconduct in order to get that. And I'll save my last few minutes for a couple of questions. All right. Thank you, counsel. Good morning, Your Honors. Deputy Attorney General Stephanie Neosci on behalf of the respondent at the ward, and in this case, may it please the Court. I will start by talking about the issue that Petitioner has argued today, which has to do with his first claim, that the admission of Ms. Simon's statement to the police violated his constitutional rights. And I'd like to note, as we pointed out in our brief, that there is a new Supreme Court case, Michigan v. Bryant, which is almost directly factually on point with this case, that establishes that, in fact, the admission of her statements to the officer was not error because the primary purpose of eliciting her statements was to meet an ongoing emergency. And the facts of that case are almost directly on point with this case, right down to having a shooting victim at a gas station. I take issue with that. Was it really her statements, was that really part of the ongoing emergency? I mean, they weren't just asking her, where did he go? We've got to find him. We've got to find the shooter. Her statements went beyond that, beyond what would be related to an emergency situation. Well, in Michigan v. Bryant, the police asked the victim who did the shooting, what had happened, where had it happened, questions of that nature. And that was basically the types of questions that the officer asked Ms. Oliva. He asked her to describe who the shooter was. He asked her what had happened, et cetera. So the questions here are very similar to the questions that were asked in Michigan v. Bryant. Counsel also tries to argue that the harmless error finding here was erroneous, but that's just simply not the case. There was overwhelming evidence establishing Petitioner's guilt in that case, and that evidence consisted of not only eyewitness testimony, but also DNA evidence as well as ballistics evidence. In terms of the eyewitness testimony, Ms. Oliva knew Petitioner. She identified him as a shooter. She testified as to what happened. She testified that Petitioner had borrowed the expedition that was used in this case from Javier Mena. The prosecutor submitted evidence that Javier Mena and Petitioner sometimes stayed at a motel directly across the street from the gas station where this crime took place. And indeed, on the day of the crime, Petitioner was a registered guest at that motel, and he listed the expedition as a vehicle that he was using. Shortly after this offense, the police located the expedition that was registered to Javier Mena. It had a garment in there that matched the description that Ms. Oliva had given. Ms. Oliva basically told the police that the shooter, Petitioner, had been wearing a blue garment with the letters L.A. on it. And inside that expedition that was registered to Javier Mena, the police found such a garment. It had DNA on it, and that DNA matched Petitioner's DNA. In addition, on the steering wheel of that vehicle, there was a small amount of DNA, and Petitioner could not be excluded as a donor of that DNA. There were a number of shell casings found at the scene of the murder. Subsequently, the police searched an apartment that Petitioner had access to. His mail was in that apartment. He was seen leaving that apartment. There were rounds in that apartment that matched the ammunition that was found or that was consistent with the ammunition that was found or the casings that were found at the scene. In addition, there was a round that was extracted from the victim, and that round was consistent with the ammunition that was found in the apartment that the police searched. Petitioner argues that it's impossible to segregate Ms. Simon's statements from the other evidence in this case, and that's simply not the case. You have testimony by Ms. Oliva. And I should note that when the jury requested readback of testimony, they requested readback of Ms. Oliva's testimony. They did not request any readback of the officer's testimony, and that tends to show that the jury was focusing on Ms. Oliva's testimony and not the officer's testimony. And finally, I'd like to note that Petitioner keeps mentioning prosecutorial misconduct, but Petitioner did not raise a prosecutorial misconduct in the district court, and so that's really not an issue here today. So in conclusion, there was ample evidence to establish Petitioner's guilt. Supreme Court precedent establishes that Petitioner is not entitled to habeas corpus relief on any of his claims, and thus the judgment at the district court should be affirmed. All right. Does anybody have any questions? Thank you, counsel. Your Honors, first of all, I disagree with some of the factual things that the State has said in terms of the so-called overwhelming evidence. There was no ballistics evidence at all because there was no murder weapon ever found. The only evidence that the State is referring to is that among the, I think, five different calibers of ammunition found in apparently the girlfriend's apartment three weeks later was one very common brand of .40 caliber ammunition, and that was one of two brands of ammunition that was used in the shooting. So, you know, there's not ballistics evidence there. There's also no DNA evidence that ties him with the shooting itself. The DNA in the vehicle only ties him to the vehicle. A jacket that was in the vehicle. A jacket that was in the vehicle in his roommate's vehicle, and it was the roommate who was first identified as being present at the shooting, and it was the roommate's car. And, you know, a Los Angeles Dodger's jacket is not exactly uncommon in the Los Angeles area. All that shows is that, you know, he was tied to his roommate's car, and that was not disputed. I think it's really an overstatement to say that there's either DNA or ballistics evidence here. As to Michigan v. Bryant, several things. One is, as the state continually reminds us, it's only the Supreme Court precedent at the time of the state court adjudication that matters, and that was not the case. The state tries to get around that by saying, well, Michigan v. Bryant merely clarified the law. If that's true, then they waived it by not raising it in the district court. Also, the California Court of Appeal made a factual finding on the issue that Michigan v. Bryant says is the crucial element to be determined. And what Michigan v. Bryant says is that the primary issue is, what is the primary purpose of the interrogation? And that is a factual question to be determined objectively. And the California Court of Appeal, which was upheld by the district court below, found, as a matter of fact, that the primary purpose was to investigate a past crime, that it occurred, you know, previously, the perpetrator was no longer there, and so on. And I have to agree with Judge Wardlaw that 90 percent of what was asked of her and what she said, Ms. Simon, during that 15 to 20 minutes that she was being interrogated at the scene, related not to, who is he? She didn't know who he was. Where was he? She didn't know where he was. You know, why did this happen? In other words, is it a danger to the whole community? She didn't know the answer to that. She did give a description, one of three, ranging from 5 feet 9, which was men of size, to 6 feet 2, which is taller than Mr. Gonzales. But 90 percent of what she said was not at all relevant to any ongoing emergency, even if one still existed. And I already said in my brief all the other reasons why I think that Michigan v. Bryant is distinguishable. I would just add one more thing, that it's not only impossible to segregate Ms. Simon's hearsay, evidence from, you know, all of the other problems at trial, but it's also impossible to segregate Garcia's evidence from what happened at trial. Ms. Garcia was called to the stand and asked seven questions to which the State knew she was going to take her Fifth Amendment rights, and that violates Douglas v. Alabama, which is the clearly established Supreme Court. Well, that was mentioned in the district court noted that that was probably misconduct. Yes. But the question is not whether there was some pedophagy going on there by the prosecutor, but which probably would not have lasted five seconds in the federal district court. But that has nothing to do with the question here, which is whether the California Court of Appeals disregarded or ruled in a manner that was contrary to federal law. And the reason I say that to the contrary, Your Honor, is, first of all, Douglas v. Alabama says there is a confrontation clause violation. If you call somebody to the witness stand who you know is going to take the Fifth Amendment, regardless of whether it was a foul. Well, nobody is arguing that there was not a confrontation violation. We are. Well, I mean, they can't seriously argue that there was not a confrontation violation. The question was, did it cause the jury to find an innocent man guilty? And I would say yes, because it was the only evidence of motive. It was the only evidence tying gangs to the violence. It was obviously very prejudicial in and of itself that, you know, they call her to the witness stand and say, do you have anything to say that could exculpate your nephew and say he wasn't a shooter? She says, I take the Fifth Amendment. But also it was the only basis for allowing in the gang testimony, what I would call the rabid dog testimony. And, you know, without the gang testimony, without the evidence of motive and gang relationship from Ms. Garcia, and without the ability to cross examine the only credible eyewitness, I don't see how merely using all of this testimony could avoid the conclusion that this could not have been a harmless error. Thank you very much, counsel. Gonzales v. Stainer is submitted.
judges: Goodwin, Hawkins, Wardlaw